Matthew CZAJHOWSKI

v.

**CITY OF PHILADELPHIA** and Ogden
Food Service Corporation of Delaware
and Travelers Insurance Company.

Civ. A. No. 81–0969.

United States District Court,
E. D. Pennsylvania.

Aug. 31, 1981.

On Motion for New Trial Oct. 22, 1981.

James D. Rosen, Marroletti, Dickstein & Scutti, Philadelphia, Pa., for plaintiff.

John B. Day, Asst. City Sol., Philadelphia, Pa., for City of Philadelphia.

E. J. McKechnie, Philadelphia, Pa., for defendants Odgen and Travelers.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiff, an employee of third-party defendant Ogden Food Service Corporation of Delaware (Ogden), was injured when he fell on a stairway at the front, right side of the Philadelphia Civic Center (Civic Center), a building owned and operated by the defendant City of Philadelphia (City). Pursuant to an agreement under which Ogden and third-party defendant Travelers Insurance Company (Travelers) each agreed to pay $35,000.00 as its respective share, subject to the court's determination of what, if any, obligation Ogden and Travelers owed to the City, plaintiff settled his claim. Presently before the court is the motion of the City for summary judgment, on its third-party claim against Ogden and the motion of Travelers to dismiss that third-party claim against it, and the cross-claims of Ogden and Travelers against the City. The parties have stipulated that there are no factual issues in dispute. Accordingly, summary judgment is appropriate, and we shall enter judgment in favor of Ogden and Travelers, on their cross-claims against the City and dismiss the third-party complaints of the City against Ogden and Travelers, and deny the City's motion for summary judgment.

Plaintiff was employed by Ogden as a manager at its food and beverage concession located at the Civic Center. He fell on an allegedly defective, out of doors staircase which leads from a sidewalk in front of the Civic Center to a garage lower level. The staircase is owned by the City, and had no connection to plaintiff's work or to Ogden's concession.

Contained originally within the bid specifications, and then within the concession contract entered into between Ogden and the City is the following clauses:

"The concessionaire shall also furnish Public Liability and Property Damage Insurance including Products Liability Insurance against any and all claims and losses arising out of the operation of the concession and the occupancy of the premises."

. . . .

"The concessionaire shall also indemnify and hold harmless the Philadelphia Civic Center and City of Philadelphia from any and all liability or loss of any nature whatsoever arising out of or relating to the concessionaire's occupancy of the premises and operation of the facilities including, without limiting the generality of the foregoing coverage, any act or omission of the concessionaire, its agents, employees or invitees."

The concession contract includes as well this clause:

"Licensee covenants and agrees to fully indemnify, protect and save harmless Licensor, its officers, agents and employees from any and all claims, demands, suits, actions and causes of action for damages for injuries to persons or damage to property suffered or incurred by any person or persons and arising from, growing out of or caused by the exercise by Licensee of the privileges herein granted."

Ogden and Travelers contend that the contract's language only indemnifies the City with regard to acts or omissions attributable to them, and not with regard to acts or omissions attributable to the City. The City argues that it can and should be indemnified against its own negligence despite the absence of express contractual language to that effect, and refers us to the case of *Urban Redevelopment Authority v. Noralco Corp.,* 281 Pa.Super. 466, 422 A.2d 563 (1980), in which the court assertedly did just that.

■ In view of the language of the contract, we cannot accept the City's argument. The concession contract did not impose upon Ogden responsibility for the cleaning and maintenance of the outside staircase area on which plaintiff fell, so that such responsibility remained with the City, the owner of the staircase, and Ogden had no duty to maintain the steps. Hence, any negligence which may be found with regard to plaintiff's fall may not be ascribed to Ogden. It is immaterial whether any such negligence may be ascribed to the City, for Ogden contracted only to indemnify the City for the acts or omissions *of itself* (Ogden), and not of anyone else, including the City. Since negligence can in no way be attributable to Ogden, and Ogden has indemnified the City only with regard to its own (Ogden's) acts or omissions, the City cannot prevail.

Moreover, absent inclusion in the contract of express language indemnifying the City for its own acts or omissions with regard to the non-concession areas of the Civic Center, with which Ogden had no connection and for which it had no responsibility we cannot read the contract to mean that Ogden agreed to indemnify the City for any and all of the City's acts or omissions *whatever* their connection with the City's ownership and operation of the Civic Center. To the contrary, the contract expressly refers to loss "arising out of or relating to the concessionaire's occupancy of the premises and operation of the facilities" and to injuries or damage "arising from, growing out of or caused by the exercise by Licensee of the privileges . . . granted."

■ Thus, even if we were to find that the City was indemnified for its own acts or omissions, we could not find any such indemnification applicable here, for the plaintiff's fall cannot be considered a loss "arising out of or relating to the concessionaire's occupancy of the premises and operation of the facilities," or "arising from, growing out of or caused by the exercise by the Licensee of the privileges . . . granted" merely because plaintiff worked for the concessionaire at the Civic Center and the fall occurred on the outside steps of the Civic Center.

■ Nevertheless, the City argues it is entitled to judgment because Ogden paid plaintiff workmen's compensation benefits as an employee injured in the course of operating Ogden's concession, it is "self-evident" that plaintiff's injuries did arise out of Ogden's occupancy of the premises. There is no logic to this argument, however, for merely because an employee is injured during the course of his employment, the prerequisite for workmen's compensation eligibility, it does not necessarily follow that his injuries were caused by the acts or omissions of his employer, rather than of some other party, or that they arose out of the employer's occupation and operation of a concession located *inside* a building, on the staircase outside of which they were sustained.

### On Motion For New Trial

This suit arises out of an accident involving an employee of third-party defendant Ogden Food Service Corporation of Delaware (Ogden), who was injured when he fell on a stairway at the front, right side of the Philadelphia Civic Center (Civic Center), a building owned and operated by the defendant, City of Philadelphia (City). Pursuant to an agreement under which Ogden and third-party defendant Travelers Insurance Company (Travelers) each agreed to pay $35,000.00 as its respective share, subject to the court's determination of what, if any, obligation Ogden and Travelers owed to the City, plaintiff settled his claim. Subsequently, this court denied the City's motion for summary judgment on its third-party claim against Ogden, and entered judgment in favor of third-party defendants Ogden and Travelers and against the City on the third-party defendants' cross-claims against the City, in the amount of $35,000.00 respectively. Presently before this court is defendant's motion for a new trial or an amended judgment with respect to its cross-claim against Travelers, as provided for under Rule 59 of the Federal Rules of Civil Procedure. For the reasons which follow, the motion is denied.

The City maintains that it "was an additional insured under Ogden Foods's [sic] public liability policy for 'all operations' of Ogden Foods including its non-negligent as well as negligent operations—and ... noting [sic] in the Certificate of Insurance remotely purports to exclude coverage to the City for the City's liability arising from the non-negligent operations of the named insured." Thus, the City contends that "the *only* requirement for coverage under the Certificate of Insurance issued by Travelers is that the City's liability arises out of Ogden's 'operations' at the Civic Center—even Ogden's non-negligent operations." This requirement, according to the City "is self-evident from the [plaintiff's] testimony and the fact that Travelers as Ogden Foods workmen's compensation carrier in fact paid him workmen's compensation."

This court's memorandum opinion and order of August 31, 1981, considered the issue of whether the plaintiff's injuries arose out of Ogden's operations at the Civic Center. This court stated that the plaintiff "fell on an allegedly defective, out of doors staircase which leads from a sidewalk in front of the Civic Center to a garage lower level. The staircase is owned by the City, and had no connection to plaintiff's work or to Ogden's concession." Furthermore, this court stated, "plaintiff's fall cannot be considered a loss 'arising out of or relating to the concessionaire's occupancy of the premises and operation of the facilities,' or 'arising from, growing out of or caused by the exercise by the Licensee of the privileges ... granted' merely because plaintiff worked for the concessionaire at the Civic Center and the fall occurred on the outside steps of the Civic Center."

The City, in its supplemental memorandum of October 1, 1981, alleges that this court's aforementioned conclusion regarding plaintiff's use of the staircase upon which he fell was based on "unfair and inaccurate statements by Travelers in its legal memorandum." This is an erroneous contention, as a review of plaintiff's deposition reveals. As is our customary procedure, this court analyzed all the facts that were brought before it, and determined that the plaintiff's injuries did not arise out of Ogden's concession operations.

As to the City's claim that payment of workmen's compensation to the plaintiff is evidence that an employee was injured in the course of operating Ogden's concession facilities, we reiterate what we stated in our earlier opinion: "There is no logic to this argument, however, for merely because an employee is injured during the course of his employment, the prerequisite for workmen's compensation eligibility, it does not necessarily follow that his injuries were caused by the acts or omissions of his employer, rather than of some other party, or that they arose out of the employer's occupation and operation of a concession located *inside* a building on the staircase outside of which they were sustained."

 Therefore, the plaintiff's injuries did not arise out of Ogden's operations at the Civic Center, and the City is not covered under Ogden's liability policy or certificate of insurance issued by Travelers.