CASUALTY INSURANCE COMPANY, Plaintiff-Appellant, v. NORTH-BROOK PROPERTY & CASUALTY INSURANCE COMPANY *et al.,* Defendants-Appellees.

First District (2nd Division)   No. 85—2323

Opinion filed November 25, 1986.

Robert L. Kiesler and Duane J. St. Pierre, both of Kiesler & Berman, of Chicago, for appellant.

D. Kendall Griffith, Fritz Huszagh, and H. Anne McKee, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellees.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:[1]

Plaintiff, Casualty Insurance Company (Casualty), appeals from a summary judgment granted in favor of Schal Associates, Inc. (Schal), and Northbrook Property & Casualty Insurance Company (Northbrook), in a declaratory judgment action, whereby Casualty was found obligated to defend Schal and reimburse Northbrook for settlement and defense costs incurred on behalf of Schal in an underlying personal injury action.

Schal was the construction manager for the owner in the construction of a multistory office building known as 200 West Madison Plaza in Chicago. All of the above-ground concrete work was subcontracted by Schal to Mid-American Concrete Company (Mid-American). Michael Krkljus (Krkljus) was an employee of Mid-American and performed services as a laborer at the site.

Mid-American obtained a general liability policy from Casualty. An endorsement was added naming Schal an "additional insured." There is no dispute that the policy was in effect on June 8, 1981, and pertained to work performed at the Madison Plaza building.

On June 8, 1981, Krkljus was injured while performing work for Mid-American on the construction site when a cable from a crane dislodged from its mooring and struck him. The crane was owned by American Bridge, a division of the United States Steel Corporation. Krkljus then brought suit to recover for his injuries against Schal and others, alleging that the defendants violated the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, par. 60).

Schal was insured by Northbrook under a general liability policy that provides, in part, that the policy "shall apply only as excess insurance over any other valid and collectible insurance which would apply in the absence of this policy, except it shall not apply as excess over any policy written as specific excess." Northbrook tendered the de-

---

[1]For purposes of briefing and oral argument, the instant appeal was consolidated with *Northbrook Property & Casualty Insurance Co. v. United States Fidelity & Guaranty Co.* (1986), 150 Ill. App. 3d 479.

fense of Schal in the Krkljus action to Casualty on September 15, 1982. On October 13, 1982, Casualty refused to defend Schal on the basis that there was no coverage afforded to Schal under the additional-insured endorsement. Northbrook then assumed the defense of Schal in the action by Krkljus.

On July 6, 1983, Casualty instituted a declaratory judgment action against Northbrook, Schal, and Krkljus, seeking a declaration that the Casualty policy did not afford coverage to Schal in the action brought by Krkljus. Northbrook and Schal answered and filed a counterclaim requesting a declaration that Schal was entitled to a defense, and ultimately indemnity, from Casualty. Northbrook alleged that Casualty was estopped from raising any coverage defenses because of its wrongful refusal to defend Schal. Finally, Northbrook and Schal requested a declaration that Casualty was liable for all costs incurred by Northbrook in defending Schal in the suit by Krkljus.

The suit by Krkljus was settled during the pendency of the declaratory action with a $5,000 contribution from Schal paid by Northbrook. On July 10, 1985, the court entered its final order, which declared that Casualty must reimburse Northbrook and Schal $5,000 as the reasonable amount for which Schal's liability was settled in the action by Krkljus and that Casualty must reimburse Northbrook and Schal for all reasonable costs and defense fees incurred in the defense of Schal from the time of the tender until settlement. Casualty appeals.

I

■ The question presented is whether Schal was entitled to a defense by virtue of being an additional insured under the policy issued by Casualty to Mid-American. The policy provides that Schal is an additional insured "but only with respect to liability arising out of operations performed for the additional insured by the named insured" at the construction site. Thus, in order to establish the obligation to defend under the policy, Northbrook and Schal need only show that Schal's potential liability to Krkljus arises from operations performed at the construction site for Schal by Mid-American.

It is well established that an insured's potential liability, for purposes of defense and indemnity coverage, is measured by the allegations of the underlying complaint. (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 393, 442 N.E.2d 245.) A liability insurer is obligated to defend an action brought against a putative insured if the complaint sets forth allegations that bring the claim within or potentially within the coverage of the insurance policy. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24; *Aetna Casu-*

*alty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914.) Moreover, the complaint must be liberally construed and all doubts resolved in favor of the insured. (*Sentry Insurance Co. v. S & L Home Heating Co.* (1980), 91 Ill. App. 3d 687, 689, 414 N.E.2d 1218.) The insurer is required to defend any claim under the pleadings which might possibly fall within the scope of the policy coverage. *La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 451, 408 N.E.2d 928, *appeal denied* (1980), 81 Ill. 2d 602.

This court has previously construed the "but only liability arising out of" language as it relates to an additional insured. (*Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 153, 466 N.E.2d 1091.) At issue in *Maryland* was whether Maryland Casualty Company owed Chicago & North Western a duty to defend in an action brought against it by an employee of its lessee, Demos News, Inc., that had leased a portion of its Chicago passenger terminal.

Maryland insured Demos News under a general liability policy that named Chicago & North Western as an additional insured "but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the named insured." (126 Ill. App. 3d 150, 153.) The Demos News employee was injured when she was attacked in nonleased portions of the terminal as she was about to begin work. The employee sued Chicago & North Western for negligence. Chicago & North Western tendered the defense to Maryland Casualty. This court held that Chicago & North Western was entitled to a defense as an additional insured. "The phrase 'arising out of' is both broad and vague, and must be liberally construed in favor of the insured; accordingly, 'but for' causation, not necessarily proximate causation, satisfies this language. [Citations.] 'Arising out of' has been held to mean 'originating from,' 'having its origin in,' 'growing out of' and 'flowing from.' [Citation.]" (126 Ill. App. 3d 150, 154.) This court concluded that "the instant injuries appear to have arisen from the operation and use of the leased premises, since they would not have been sustained 'but for' the victim's employment on those premises. *** The policy *** must be construed to cover any risks attendant upon her presence there resulting from C&NW's negligence and thereby activates Maryland's duty to defend C&NW." 126 Ill. App. 3d 150, 155.

Although Casualty accepts the pronouncement of this court in *Maryland,* it urges us to follow *Consolidation Coal Co. v. Liberty Mutual Insurance Co.* (W.D. Pa. 1976), 406 F. Supp. 1292. In *Consolidation Coal* the additional-insured endorsement provided that Consolida-

tion Coal was an additional insured, "but only with respect to *acts or omissions of the named insured* in connection with the named insured's operations at the applicable location designated." (Emphasis added.) (406 F. Supp. 1291, 1296.) Thus, the language "acts or omissions of the named insured," which is not present in the case before us, specifically limits the extent that Consolidation Coal was to be an additional insured to those situations where the named insured's negligence caused Consolidation Coal to suffer liability. Based on this qualifying language, the court held that Consolidation Coal was an additional insured under the policy only when the negligent acts or omissions of the named insured directly caused Consolidation Coal's loss. (406 F. Supp. 1291, 1299.) This holding is correct because the endorsement specifically referred to the fault of the named insured.

■ However, there is no similar qualifying language in the case presented here. The endorsement provides that Schal is an insured for liability "arising out of operations" performed for Schal by Mid-American. There is no reference in the endorsement requiring the fault of Mid-American. In the case before us, Schal's potential liability to the underlying plaintiff arises from the fact that Krkljus was performing work for Mid-American, who in turn was performing operations for Schal. Therefore, regardless of the role of any acts or omissions of Mid-American, Schal is entitled to a defense from Casualty.

If Casualty had intended to limit its obligation to Schal to those situations where the negligent acts or omissions of Mid-American had been established, it could have done so by using language similar to that found in *Consolidation Coal.* However, such language was not used. The language that was employed requires only that Schal's liability arise out of operations of Mid-American.

The underlying complaint alleges that Krkljus was injured while working for Mid-American. Since Mid-American was performing operations pursuant to its contract with Schal at the time the injuries occurred, any liability will arise out of operations performed by Mid-American for Schal, the additional insured. Thus, Schal is entitled to coverage under the additional-insured endorsement.

## II

■ Casualty contends that it has no duty to provide Schal with a defense based on an exclusion in the policy endorsement which provides that this insurance does not apply:

"(b) to bodily injury or property damage arising out of any acts or omission of [Schal] or any of his employees, other than general supervision of the work performed for [Schal] by [Mid-

American]."

Casualty argues that this exclusion further qualifies and limits Schal's coverage to Schal's general supervision of Mid-American.

Again, the issue here is only whether Schal was entitled to a defense in the Krkljus action from Casualty. If even a potential exists that Schal could be held liable to Krkljus by virtue of its general supervision of the operations of Mid-American, Casualty had a duty to defend Schal. See *La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 452, 408 N.E.2d 928, *appeal denied* (1980), 81 Ill. 2d 602.

In the underlying complaint, Krkljus alleged that Schal participated in coordinating the work, scheduling the work, and inspecting the work performed by Mid-American. The complaint states that Schal had authority to stop the work and order changes in the work. Krkljus also alleged that Schal failed to properly place or locate the crane, which gave rise to his injuries. These allegations clearly suggest that Schal had supervisory responsibility and are sufficient to establish that Schal's liability to Krkljus may arise out of its general supervision of the construction operations performed by Mid-American.

Casualty's argument that, because the underlying complaint contains no allegations of negligence against Mid-American, Schal's general supervision of Mid-American's operations would not subject Schal to liability, ignores Mid-American's inchoate immunity under the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch., 48, par. 138 *et seq.*) to a suit by its employee, Krkljus. In addition, merely because Krkljus has not sued Mid-American does not mean that Schal could not be held liable by virtue of its general supervision of Mid-American.

The underlying complaint alleges a violation of the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, par. 60). A defendant may be held liable under the Structural Work Act if he is "in charge of" the construction operations involving a violation of the Act. Moreover, a defendant has been found to be in charge of the work where he has a right to stop the work (*Miller v. Dewitt* (1967), 37 Ill. 2d 273, 284, 226 N.E.2d 620) or where he possesses the overall right of supervision and the right to control the manner and methods by which the work is performed (*Scrimager v. Cabot Corp.* (1974), 23 Ill. App. 3d 193, 196, 318 N.E.2d 521). Here, the mere fact that Schal is alleged to have had the right to control and coordinate the work of Mid-American is tantamount to an allegation of general supervision and could potentially give rise to a finding that Schal should not have allowed the work to be coordinated in such a fashion that Mid-American employees were working in the vicinity of the crane. Therefore, the potential exists that

Schal's liability to Krkljus arises out of its acts or omissions in connection with its general supervision of Mid-American's operations. Schal was entitled to a defense.

### III

■ During the pendency of the declaratory judgment action, the underlying suit filed by Krkljus under the Structural Work Act was settled by a contribution of $5,000 by Northbrook on behalf of Schal. The trial court ordered Casualty to reimburse Northbrook for this sum and held that Casualty is estopped from asserting policy defenses.

In cases where an insurer believes a policy does not provide coverage, its options are clear. It must either defend under a reservation of rights or secure a declaratory judgment as to its rights and obligations before trial or settlement of the underlying action. (*La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 451, 408 N.E.2d 928, *appeal denied* (1980), 81 Ill. 2d 602.) Where the insurer fails to take either course of action, its failure to defend is unjustified and it is estopped from later raising policy exclusions or defenses in a subsequent action by the insured or the insured's subrogee. *Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 387 N.E.2d 700, *appeal denied* (1979), 79 Ill. 2d 617; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123, *appeal denied* (1964), 28 Ill. 2d 626.

Casualty seeks to avoid the imposition of estoppel on the basis that Northbrook assumed the defense of Schal in the underlying action. The theory is that since Schal was defended by another insurer (Northbrook), it was not prejudiced by Casualty's refusal to defend. This argument was rejected in *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 748-49, 358 N.E.2d 914, in which the court stated:

> "Estoppel arises as a direct result of the insurer's breach of contract. *** The contract becomes no less breached because of the fortuitous existence of another insurer who is willing to meet its own obligations. The thrust of Illinois law places a burden upon the primary insurer rather than the insured or any other party, to fulfill its duty to defend and to take any action necessary to preserve its exclusionary defenses."

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.