Scott E. McINTOSH and Steven R. McIntosh, Plaintiffs– Appellants,

v.

SCOTTSDALE INSURANCE COMPANY, Defendant–Appellee.

No. 92–3164.

United States Court of Appeals, Tenth Circuit.

April 22, 1993.

Jack S. McInteer (Randall K. Rathbun, of Depew, Gillen & Rathbun, Wichita, KS, was with him on the brief), of Depew, Gillen & Rathbun, Wichita, KS, for plaintiffs-appellants.

Stephen M. Kerwick, of Foulston & Siefkin, Wichita, KS, for defendant-appellee.

Before TACHA, McWILLIAMS, and BALDOCK, Circuit Judges.

TACHA, Circuit Judge.

In this garnishment action, Scott McIntosh and his father, Steven McIntosh, appeal from a district court order denying their motion for summary judgment and granting Scottsdale Insurance Company ("Scottsdale") its motion for summary judgment. The district court held that Scottsdale does not owe the City of Wichita, Kansas ("Wichita") coverage for a tort judgment that the McIntoshes won against Wichita. We exercise jurisdiction under 28 U.S.C. § 1291 and reverse.

## I. BACKGROUND

This case arose when Scott McIntosh suffered injuries from a fall on the premises of Wichita's Century II convention facilities during the 1988 Wichita River Festival. Wichita Festivals, Inc. ("Festivals"), a non-profit corporation, runs the annual festival as Wichita's official representative pursuant to a city ordinance. *See* Wichita, Kan., Code of the City §§ 3.14.010–.050 (1985). While attending a street dance sponsored by Festivals, Scott sought one of the portable toilets Festivals provided for its patrons in an effort to answer the call of nature. Feeling the urgency of that call, he left the public pathway to take a more direct route and encountered a low retaining wall which separated the pathway from the entrance to Century II's underground garage. Scott jumped over the wall, fell approximately twenty feet, and suffered several injuries.

The McIntoshes sued Wichita in state court, alleging that Scott's injuries were caused by the city's failure to warn of a dangerous condition. Wichita tendered defense of the suit to Festival's liability insurer, Scottsdale, because Wichita is an additional insured under Festivals' policy. After Scottsdale denied coverage, Wichita tendered the defense to its general liability insurer, Hanover Insurance Co. ("Hanover"), which accepted the tender. Before the case went to trial, Wichita agreed to stipulate that it was 100% at fault. In return, the McIntoshes agreed not to execute against Wichita's assets and to release Hanover from any claims growing out of the accident. The case was tried on damages only, and judgment was entered against Wichita for $74,571.15 plus costs.

The McIntoshes then filed a garnishment action in state court against Scottsdale, alleging that Scottsdale owed Wichita coverage for the tort judgment. Scottsdale removed the case to the United States District Court for the District of Kansas. Following discovery, the parties filed cross-motions for summary judgment relying on essentially the same facts. The McIntoshes argued that Scottsdale is liable for the tort judgment under two separate provisions in Festivals' liability policy. First, they argued that the

endorsement which names Wichita as an additional insured covers Wichita for all liability arising out of the festival, including liability based on Wichita's own negligence. Even assuming, as Scottsdale contended, that the endorsement itself provides coverage only in cases where Wichita is vicariously liable for Festivals' negligence, the McIntoshes argued that the policy still provides coverage because it is controlled by a city ordinance that allegedly *requires* Festivals to purchase insurance covering Wichita for its own negligence.

Second, they argued that Scottsdale owes coverage to Festivals because the same city ordinance also allegedly requires Festivals to indemnify Wichita for its own negligence. Although the policy contains a contractual liability exclusion, an "incidental contracts" clause excepts from the exclusion liability based on agreements to indemnify a municipality. The McIntoshes argued that because Festivals must indemnify Wichita and because the policy covers Festivals for such indemnification, Scottsdale ultimately owes Wichita the amount of the underlying tort judgment.

The district court examined the language of the additional insured endorsement and concluded that it does not cover Wichita for its own negligence. It further concluded that, assuming that the ordinance could override the policy, the ordinance does nothing to amend the policy because it does not require Festivals to obtain insurance covering Wichita for its own negligence. Finally, because the ordinance does not require Festivals to indemnify Wichita for its own negligence, the court held that the McIntoshes cannot prevail under the incidental contracts clause. It therefore granted Scottsdale's motion for summary judgment and denied the McIntoshes' cross-motion, including their request for attorneys fees. *McIntosh v. Scottsdale Ins. Co.*, 789 F.Supp. 1126 (D.Kan.1992). This appeal followed.

## II. STANDARD OF REVIEW

▮ We review summary judgment orders de novo, using the same standards the district court applies. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Ordinarily, the denial of the McIntoshes' motion for summary judgment would not be an appealable final order. *See Schmidt v. Farm Credit Servs.*, 977 F.2d 511, 513 n. 3 (10th Cir.1992). Where we reverse a summary judgment order in favor of one party, however, we will review the denial of the other party's cross-motion for summary judgment under the same standards applied by the district court so long as it is clear that the party opposing the cross-motion had an opportunity to dispute the material facts. *Id.; cf. Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir.1979). In this diversity case, we ascertain and apply Kansas law such that we reach the result that would be reached by a Kansas court. *See Adams–Arapahoe Sch. Dist. No. 28–J v. GAF Corp.*, 959 F.2d 868, 870 (10th Cir.1992). We review de novo the district court's rulings with respect to Kansas law. *See Salve Regina College v. Russell*, 499 U.S. 225, ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

## III. DISCUSSION

▮ The McIntoshes contend that the district court erred because (1) the additional insured endorsement provides coverage for Wichita's own negligence; (2) the city ordinance controls the Scottsdale policy and amends it to cover Wichita for its own negligence; and (3) the city ordinance requires Festivals to indemnify Wichita for its own negligence so that Scottsdale ultimately owes Wichita under the incidental contracts clause. Because we agree that the policy itself covers Wichita as an additional insured, and because Scottsdale had a fair opportunity to dispute all the material facts, we reverse the district court and order it to enter judgment in favor of the McIntoshes.

The additional insured endorsement provides:

> The "Persons Insured" provision is amended to include as an insured the person or organization named below but only with respect to liability arising out of operations performed for such insured by or on behalf of the named insured.

Festivals is the named insured. Wichita is named as an additional insured. The district court interpreted the phrase "arising out of the operations performed ... by ... the named insured" to mean arising from Festivals' negligence, thereby excluding coverage for Wichita's negligence. Put another way, the court concluded that the plain language of the endorsement unambiguously covers Wichita only to the extent that it is held vicariously liable for Festivals' negligence. We disagree.

■ In Kansas, the construction of an insurance policy is a legal determination subject to de novo review. *Farm Bureau Mut. Ins. Co. v. Old Hickory Casualty Ins. Co.,* 248 Kan. 657, 810 P.2d 283, 285 (1991). Accordingly, we review the district court's determination by applying the Kansas rules of insurance contract interpretation and construction. The Kansas Supreme Court recently summarized those rules:

> To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of the two or more meanings is the proper meaning. The language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties. Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail. Since the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage provided in the policy, it must use clear and unambiguous language

in doing so; otherwise, the policy will be liberally construed in favor of the insured. When an insurance contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made.

*Id.* 810 P.2d at 285–86. As an alternative to the rule of liberal construction of ambiguous terms, the Kansas courts sometimes apply the related doctrine of "reasonable expectations." *See Penalosa Coop. Exch. v. Farmland Mut. Ins. Co.,* 14 Kan.App.2d 321, 789 P.2d 1196, 1198 (1990). Under that doctrine, "[w]here the terms are ambiguous, the policy shall be construed to mean what a reasonable person in the position of the insured would have understood them to mean." *House v. American Family Mut. Ins. Co.,* 251 Kan. 419, 837 P.2d 391, 397 (1992); *see also* Robert I. Keeton & Alan L. Widiss, Insurance Law § 6.3, at 633 (1988) ("In general, the courts will protect the reasonable expectations of applicants, insureds, *and intended beneficiaries* regarding the coverage afforded by insurance contracts....").

■ Applying these rules to the additional insured endorsement, we conclude that it covers Wichita for the tort judgment. At best, the phrase "but only with respect to liability arising out of [Festivals'] operations" is ambiguous as to whose negligence is covered and whose negligence is excluded from coverage. Because this ambiguous language purports to limit coverage, we must construe it narrowly. 810 P.2d at 286; *Arnold v. Adventure Line Mfg. Co.,* 209 Kan. 80, 495 P.2d 1007, 1011 (1972) ("That liability which is not clearly excluded from coverage under a general comprehensive liability insurance contract is presumed to have been included."). Although the Kansas courts have not addressed the precise language before us, we believe that the Kansas courts, like courts in other jurisdictions that liberally construe ambiguous insurance policy provisions in favor of the insured, would conclude that the additional insured endorsement does not limit the policy's coverage to cases where Wichita is held vicariously liable for Festivals' negligence. *See, e.g., Philadelphia Elec. Co. v. Nationwide Mut. Ins. Co.,* 721 F.Supp. 740, 742 (E.D.Pa.1989) (holding that clause adding

additional insureds "for any work performed by [the named insured] on their behalf" covered additional insureds for their own negligence related to work of named insured); *Casualty Ins. Co. v. Northbrook Property & Casualty Ins. Co.*, 150 Ill.App.3d 472, 103 Ill.Dec. 495, 498, 501 N.E.2d 812, 815 (1986) (holding that phrase "arising out of operations performed for the additional insured by the named insured" covered additional insured for its own negligence); *Dayton Beach Park No. 1 Corp. v. National Union Fire Ins. Co.*, 175 A.D.2d 854, 573 N.Y.S.2d 700, 701 (holding that phrase "arising out of ... operations performed for the additional insured ... by the named insured" covered additional insured for its own negligence), *appeal denied*, 78 N.Y.2d 864, 578 N.Y.S.2d 879, 586 N.E.2d 62 (1991). As the *Philadelphia Electric* court stated, "[i]f the parties had intended coverage to be limited to ... vicarious liability ..., language clearly embodying that intention was available." 721 F.Supp. at 742.[1]

We further conclude that Wichita's liability "arose out of" Festivals' operations. The phrase "arising out of" clearly relates to causation, but its terms are "both broad and vague." *Casualty Ins.*, 150 Ill.App.3d at 497,

103 Ill.Dec. at 497, 501 N.E.2d at 814. The Kansas courts have held that this ambiguous phrase "imparts a more liberal concept ... than 'proximate cause,'" *see Pestock v. State Farm Auto. Ins. Co.*, 9 Kan.App.2d 188, 674 P.2d 1062, 1063 (1984). Although a remote connection between Festivals' operations and Scott's injuries would not suffice, *see, e.g., Farm Bureau Mut. Ins. Co., Inc. v. Evans*, 7 Kan.App.2d 60, 637 P.2d 491, 494 (1981) (rejecting strict "but for causation"), we conclude that the facts of this case clearly demonstrate the requisite causal connection. It is undisputed that Scott McIntosh was injured while walking from a dance sponsored by Festivals to the portable toilets set up by Festivals. Under these circumstances, a reasonable insured in Wichita's position would understand that Scott's injuries, and Wichita's liability, "arose out of" Festivals' operations. *See Penalosa Coop. Exch.*, 789 P.2d at 1198 (describing doctrine of reasonable expectations). Therefore, we hold that Scottsdale owes Wichita coverage for the tort judgment as a matter of law.

Our disposition of the case makes it unnecessary to decide whether the ordinance amends the additional insured endorsement[2]

**1.** Scottsdale's reliance on *Harbor Insurance Co. v. Lewis*, 562 F.Supp. 800 (E.D.Pa.1983), and *Czajhowski v. City of Philadelphia*, 537 F.Supp. 30 (E.D.Pa.1981), *aff'd*, 688 F.2d 819 (3d Cir. 1982), is misplaced. In *Harbor*, the court found that "[i]n the insurance industry, additional insured provisions have a well established meaning. They are intended to protect parties who are not named insureds from exposure to vicarious liability for acts of the named insured." 562 F.Supp. at 803. We do not consider this passage persuasive because it was a fact finding based on expert testimony before the *Harbor* court and not part of the record before us. *See id.* More importantly, the court was interpreting a clause that specifically provided that the policy only covered the additional insured "to the extent of liability resulting from occurrences arising out of *negligence*" of the named insured. *Id.* at 802. As the court later stated in *Philadelphia Electric*, the *Harbor* court did not "articulate a rule of law limiting the interest of an additional insured on a comprehensive general liability policy to those cases in which it is vicariously liable for the acts of the primary policyholder." 721 F.Supp. at 742.

*Czajhowski* is also inapposite. The court there examined the language of a private contract of indemnity between the city of Philadelphia and a concessionaire at the city's civic center, rather

than an insurance policy. The court concluded that the phrase "arising out of or relating to the concessionaire's occupancy of the premises" did not cover the city for its own negligence because it failed to contain express language to that effect. 537 F.Supp. at 31–32. The court thus applied the general rule, also followed in Kansas, that private contracts of indemnity are to be strictly construed against the indemnitee. *See, e.g., Elite Professionals, Inc. v. Carrier Corp.*, 16 Kan.App.2d 625, 827 P.2d 1195, 1202–03 (1992). As we discuss above, however, the Kansas courts apply precisely the opposite rule when construing insurance policies. *See, e.g., Farm Bureau*, 810 P.2d at 286; *see also Pickhover v. Smith's Management Corp.*, 771 P.2d 664, 668 & n. 3 (Utah Ct.App.1989) (recognizing that the general rules for construing private contracts of indemnity and insurance policies achieve opposite results), *cert. denied*, 795 P.2d 1138 (Utah 1990).

**2.** Even if the ordinance did not require Festivals to procure insurance covering Wichita for its own negligence, Festivals could purchase *broader* coverage than that required by the statute. *See Bell v. Simon*, 246 Kan. 473, 790 P.2d 925, 929 (1990). Courts enforce insurance policy provisions that provide coverage beyond the requirements of statutes or contracts to procure insurance. *See, e.g., State v. Underwriters at Lloyd's,*

or whether the McIntoshes could prevail under the incidental contracts clause. We therefore REVERSE the order granting Scottsdale's motion for summary judgment and denying the McIntoshes' cross-motion for summary judgment and REMAND with an order to enter summary judgment on the garnishment claim in favor of the McIntoshes and conduct a hearing on the McIntoshes' request for attorneys' fees.

London, 755 P.2d 396, 400 & n. 8 (Alaska 1988); Heat & Power Corp. v. Air Prods. & Chems., Inc., 320 Md. 584, 578 A.2d 1202, 1207–08 (1990); Long Island Lighting Co. v. American Employers Ins. Co., 131 A.D.2d 733, 517 N.Y.S.2d 44, 45 (1987).