**STEVENS PAINTON CORPORATION,**
**Appellant,**

v.

**FIRST STATE INSURANCE COMPANY and Witco Corporation,**
**Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1999.
Filed March 1, 2000.

Joseph D. Talarico, Pittsburgh, for appellant.

Deborah S. Brenneman, Cincinnati, OH, for First State Ins. Co., appellee.

Before POPOVICH, JOYCE and BROSKY, JJ.

POPOVICH, J.:

¶ 1 This is an appeal from the judgment entered on April 9, 1999, in the Court of Common Pleas, Butler County, in favor of First State Insurance Company and against Stevens Painton Corporation. On appeal, Stevens challenges the lower court's finding that Stevens' declaratory judgment action was barred by the doctrine of *res judicata* and the alternate finding that First State's umbrella provision of the insurance contract did not apply. We affirm.

¶ 2 In May of 1988, Stevens entered into a Fixed Price Construction Contract ("construction contract") with Witco Corporation. Joint Stipulation of Facts at 2, ¶ 5. Witco hired Stevens to perform extensive renovations to the pump house at Witco's plant in Petrolia, Pennsylvania. The work involved excavating the existing structure, installing pipes, pumps and instrumentation, and performing architectural work. *Id.* at 2, ¶ 7. The construction contract required Stevens to maintain a Contractor's Comprehensive General Liability Policy during the course of construction and until Witco accepted the work. *Id.* at 4, ¶ 11.

¶ 3 In the early summer of 1988, Stevens employed Kenneth Baptiste as a pipe fitter at the Witco plant. Stip. at 4, ¶ 14. He had been working at the plant for approximately seven weeks prior to the date of his alleged injury. *Id.* at 5, ¶ 16. During this seven-week period, Baptiste regularly worked in and around the pump house area. *Id.* at 5, ¶ 17. To get to his regular job site, Baptiste would walk along a roadway from the main trailers to the pump house. *Id.* at 5, ¶ 18. On a typical day, Baptiste would traverse this roadway approximately six times. *Id.* at 5, ¶ 19. All personnel at the refinery regularly used the roadway as a walkway. *Id.* at 5, ¶ 20.

¶ 4 On July 22, 1988, Baptiste fell on the roadway and allegedly suffered injury. Stip. at 4, ¶ 14. At the time of the incident, Baptiste was leaving the pump house to go to the bank for personal business. *Id.* at 5, ¶ 22. The location of the fall was on the roadway between the wax cake building and a wall lining the tank farm. *Id.* at 5, ¶ 24. Toward the middle of the roadway was a catch basin with a grate for collecting runoff. *Id.* at 6, ¶ 25.

¶ 5 The construction contract did not require Stevens to maintain, repair, replace, or improve the roadway where Baptiste fell. Stip. at 6, ¶ 27. Witco was responsible for the control, inspection, and maintenance of the roadways within its Petrolia plant. *Id.* at 6, ¶ 28.

¶ 6 On July 2, 1990, Baptiste filed a Complaint against Witco in the Court of Common Pleas, Butler County.[1] Stip. at 6, ¶ 29. In the Complaint, Baptiste alleged that while walking toward the trailers, he turned to the left to avoid a pothole. While doing so, his left foot went out from under him and his right leg flew to the right, resulting in his fall. *Id.* at 5, ¶ 21. He fell while walking on an oily portion of unpaved roadway, *Id.* at 6, ¶ 30, in the vicinity of the catch basin. *Id.* at 6, ¶ 26. Baptiste's alleged injuries consisted of injuries to the knee, shoulder, back and neck. Baptiste's Complaint at ¶ 7. In his Complaint, he alleged that his injuries were caused by Witco's negligence. Stip. at 6, ¶ 31.

¶ 7 On August 27, 1990, Witco filed a Complaint that joined Stevens as an additional defendant. Stip. at 7, ¶ 32. On

---

1. *Kenneth Baptiste v. Witco Corp.*, No. A.D.

March 23, 1992, Witco filed an Amended Complaint that alleged Stevens breached the construction contract by failing to name Witco as an additional insured under its Contractor's Comprehensive General Liability Policy. *Id.* at 7, ¶ 33.

¶ 8 At the time of Baptiste's injury, Stevens had a Contractor's Comprehensive General Liability Policy ("CGL") from Aetna.[2] Aetna's policy contained a provision in which Stevens, as the insured, must notify Aetna of the parties Stevens wished to add as an additional insured. Stip. at 8, ¶ 41. The CGL policy did not contain an additional insured endorsement for Witco. *Id.* at 9, ¶ 44. Witco was never listed or named as an additional insured under the CGL policy and, thus, was not an insured under that liability policy. *Id.* at 13, ¶ 51. Stevens had an additional insurance policy for excess and umbrella coverage through First State.[3] *Id.* at 9, ¶ 46. Stevens demanded that Aetna and First State assume its defense, while Witco demanded that Stevens assume its defense against Baptiste's claims. *Id.* at 7, ¶ 34. Aetna, First State and Stevens refused to defend, indemnify and hold Witco harmless for any judgments or claims arising from Baptiste's injury. *Id.* at 7, ¶ 35.

¶ 9 Stevens filed a Complaint for Declaratory Judgment in the Court of Common Pleas, Cuyahoga County, Ohio,[4] against Witco and Aetna and later amended the Complaint to add First State.[5] Stevens asked the Ohio lower court to construe the construction and insurance contracts to determine if Stevens was entitled to a defense or coverage under either insurance policy. *Stevens Painton Corp. v. Aetna Casualty, et al.*, No. CV–247487 (Cuyahoga County, filed December 30, 1994) at 2. The parties submitted the action on concurrent motions for summary judgment and a joint stipulation of facts. In the journal entry of December 30, 1994, the Ohio lower court granted summary judgment in favor of Aetna and First State and against Stevens and Witco. *Id.* at 4. The Ohio lower court determined that Aetna's CGL policy coverage for bodily injury and property damage did not include breach of contract claims. Therefore, the Ohio lower court held that Witco's breach of contract claim against Stevens did not trigger coverage or a duty to defend or indemnify Stevens under Aetna's CGL policy. *Id.* at 4. The Ohio lower court used the same rationale to find that First State had no duty to defend Stevens in Witco's breach of contract claim. *Id.* at 4.

¶ 10 Stevens timely appealed the Ohio lower court's decision.[6] Stevens contended that the Ohio lower court erred by failing to decide whether First State's umbrella policy included Witco as an insured for the purposes of Baptiste's bodily injury claim and by concluding that no coverage existed under Aetna's CGL policy or First State's excess policy for Baptiste's bodily injury claim. *Stevens Painton Corp. v. Aetna Casualty*, No. 68464 (Ohio Ct.App., 8ᵗʰ D. filed September 28, 1995) at 2, 1995 WL 572035. On September 28, 1995, the Eighth District Court of Appeals, Ohio, affirmed the lower court decision. It held that neither Aetna's nor First State's insurance policy covered Witco's action against Stevens for breach of contract. *Id.* at 4, 6. It also noted that the trial court elected not to rule on the merits of the breach of contract action because it was currently pending before a Pennsylvania court. *Id.* at 4. It added that the lower court did not have to determine whether

---

**2.** Aetna Commercial General Liability Policy Number 02C0562279CCA. The policy period was effective from May 1, 1988, to May 1, 1989.

**3.** First State Excess/Umbrella Liability Policy Number U.S. 0000456. The policy was effective from May 1, 1988, to May 1, 1989.

**4.** Stevens is an Ohio corporation and is licensed to do business in Pennsylvania.

**5.** *Stevens Painton Corp. v. Aetna Casualty & Surety, et al.*, Case No. CV–247487.

**6.** *Stevens Painton Corp. v. Aetna Casualty & Surety*, No. 68464.

coverage would have existed under the umbrella policy because that policy concerns only Baptiste's personal injury action against Witco. *Id.* at 4.

¶ 11 On May 10, 1996, Stevens filed a Complaint for Declaratory Judgment in the Court of Common Pleas, Butler County, Pennsylvania, for a determination as to any duties of First State. Stevens prayed for judgment:

1. DECLARING THE RIGHTS AND DUTIES OF THE PARTIES UNDER THE FIRST STATE INSURANCE POLICY;

2. DECLARING THAT FIRST STATE OWES A DUTY TO DEFEND AND/OR INDEMNIFY STEVENS WITH RESPECT TO THE CLAIMS ASSERTED BY WITCO;

3. FOR SUCH OTHER EQUITABLE RELIEF TO THE CLAIMS ASSERTED BY WITCO.

Declaratory Judgment at 7. Both Stevens and First State filed Motions for Summary Judgment based upon the same facts as stipulated by the parties in the Ohio action.

¶ 12 On April 9, 1999, the lower court granted summary judgment in favor of First State and denied Stevens' summary judgment motion. The lower court held that Stevens' declaratory judgment action was barred by the doctrine of *res judicata.* *Stevens v. Painton Corp. v. First State Ins. Co. & Witco Corp.*, No. 96–10413 (Butler County, filed on April 9, 1999) at 6. The lower court went on to say that if *res judicata* was not applicable, then Witco was not an additional insured under the umbrella policy because Baptiste's injuries did not arise out of the operations of Stevens. *Id.* at 7. Stevens filed this timely appeal.

¶ 13 At some point in time during these declaratory judgment actions, Witco settled the personal injury lawsuit with Baptiste for $100,000.00.

¶ 14 Stevens presents the following issues for our review:

1. DID THE COURT BELOW ERR IN DETERMINING THE DECLARATORY JUDGMENT ACTION WAS BARRED BY THE DOCTRINE OF *RES JUDICATA* STEMMING FROM AN EARLIER DECISION ISSUED BY AN OHIO COURT?

2. DID THE COURT BELOW ERR IN DETERMINING THE NATURE AND EXTENT OF COVERAGE AFFORDED UNDER THE UMBRELLA PROVISION OF THE INSURANCE CONTRACT IN QUESTION?

Appellant's Brief at 3.

¶ 15 Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.Civ.P. 1035.2. A material fact is one that directly affects the outcome of the case. *Beach v. Burns Intern. Sec. Services*, 406 Pa.Super. 160, 593 A.2d 1285, 1286 (1991).

¶ 16 Our scope of review of a trial court Order granting summary judgment is plenary. *Weishorn v. Miles–Cutter*, 721 A.2d 811, 813 (Pa.Super.1998), *appeal granted*, 747 A.2d 370, 1999 Pa. LEXIS 3387 (Pa. Nov. 9, 1999). We stated:

> In reviewing the order, we must examine the record in the light most favorable to the adverse party and determine whether the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.

*Id.* at 813 (citations omitted). We will overturn a lower court's entry of summary judgment "only if there has been an error of law or a clear abuse of discretion." *Hoffman v. Brandywine Hospital*, 443 Pa.Super. 245, 661 A.2d 397, 399 (1995) (citations omitted).

¶ 17 First, we will examine Stevens' contention that the lower court erred in determining Stevens' declaratory judgment action was barred by the doctrine of *res judicata*. The doctrine of *res judicata* bars repetitious litigation of the same cause of action.

"A final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action." The purpose of the doctrine is "to minimize the judicial energy devoted to individual cases, establish certainty and respect for court judgments, and protect the party relying on the previous adjudication from vexatious litigation." *Dempsey v. Cessna Aircraft Co.*, 439 Pa.Super. 172, 653 A.2d 679, 681 (1995) (*en banc*), *appeal denied*, 541 Pa. 631, 663 A.2d 684 (1995) (citations omitted).

¶ 18 Application of the doctrine of *res judicata* requires that the two actions possess the following common elements: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the capacity of the parties. *Dempsey*, 653 A.2d at 681 (citations omitted). The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding where the parties had an opportunity to appear and assert their rights. *Taylor v. Shiley Inc.*, 714 A.2d 1064, 1066 (Pa.Super.1998), *appeal denied*, 558 Pa. 601, 735 A.2d 1270 (1999) (citing *In re Jones Laughlin Steel Corp.*, 328 Pa.Super. 442, 477 A.2d 527, 531 (1984)).

¶ 19 Clearly, there is no disputing the fact that, with respect to the identities of the thing sued upon and of the parties and capacity thereof, the Ohio and Butler actions are patently similar. Stevens brought Declaratory Judgment actions against First State and Witco in Ohio and Pennsylvania, and each party had the ability to sue and be sued, respectively. *See, e.g., Kreider v. Kleinfelter*, 314 Pa.Super. 571, 461 A.2d 304 (1983).

¶ 20 The only issue in the doctrine of *res judicata* that remains is the identity of the causes of actions. In the Ohio Declaratory Judgment action, Stevens sought, and received a ruling on, First States duty to defend and indemnify in Witcos action against Stevens for beach of contract. In the Butler Declaratory Judgment action, Stevens asked the lower court to declare that First State has a duty to defend and indemnify Stevens with respect to Witcos breach of contract claim. Declaratory Judgment, at 7. Clearly, the doctrine of *res judicata* bars Stevens from raising this issue in Pennsylvania. We give full force and effect to the Ohio courts decision that First State is not required to defend and indemnify Stevens in Witcos breach of contract action.

¶ 21 However, our analysis does not end here. We note that in the Ohio action, Stevens asked the court to declare the rights and duties of the parties under the insurance policies. The Ohio courts found it unnecessary to determine whether coverage would have existed under the umbrella policy issued by First State.[7] In the Butler action, Stevens asked the court to declare the rights and duties of the parties under the First State insurance policy. Declaratory Judgment, at 7. The Ohio court declined to address this issue, so the identity of this cause of action is not the same in both declaratory judgment actions.

---

7. Specifically, the Ohio Court of Appeals stated:

The trial court, as a result of the dismissal of claims and its decision to not rule on the merits of the breach of contract action, limited itself to determining whether coverage existed for Witco's action against Stevens Painton's failure to name Witco as an additional insured in a general liability insurance policy. The umbrella-coverage provision of the First State insurance policy concerns only the employee's action against Witco. Consequently, it was unnecessary for the trial court to determine whether coverage would have existed under the umbrella-coverage provision of the First State insurance policy.
Court Opinion at 4.

Therefore, we find that the doctrine of *res judicata* does not apply with respect to Stevens request for a declaration of the rights and duties of the parties under the First State Insurance policy.

¶ 22 The Butler court, in its opinion, stated that if the doctrine of *res judicata* was not applicable, First State was entitled to summary judgment in its favor based upon the terms of the insurance policy. We agree.

¶ 23 First we note, in the construction contract, Stevens agreed to indemnify Witco on any personal injury or property claims arising out of the work performed by Stevens and to add Witco as an additional insured on Stevens insurance coverage. The construction contract, in pertinent part, states:

14.1 The Contractor shall protect its workmen and the public from injury and property in and around the work-site from damage. The CONTRACTOR shall be responsible, and not the OWNER, for any injury to the persons of the workmen or public and any damage to property in and about the work-site. In the event of any injury to persons or any damage to property, CONTRACTOR shall immediately notify OWNER'S authorized representative.

\* \* \*

14.6 The CONTRACTOR agrees to defend, indemnify, and hold harmless, all at its expense, the OWNER from and against all liens, claims, and demands, loss, costs, damages, actions, suits, or other proceedings by whomever made, including claims for bodily injuries, death and property loss and damage, brought or prosecuted in any manner based upon, occasioned by, or attributed to the CONTRACTOR, its agents, invitee, licensee, or Subcontractors and all workmen and persons employed by it or otherwise under its control.

\* \* \*

14.9 During the course of construction and until the work is finally accepted by OWNER, or until sooner authorized by OWNER in writing, CONTRACTOR shall maintain the following kinds of insurance . . . ,

\* \* \*

c) CONTRACTOR'S Comprehensive General Liability, including Contractual Liability and Completed Operations. If subcontractors are employed, CONTRACTOR'S Protective Liability must be included.

\* \* \*

14.10 CONTRACTOR shall name OWNER as additional insured with respect to the above kinds of insurance, unless and to the extent prohibited by statute.

¶ 24 We must determine if Witco is covered under First State policy. Pursuant to Pennsylvania law,

[An] insurer agrees to defend the insured against any suits arising under the policy "even if such suit is groundless, false, or fraudulent." Since the insurer thus agrees to relieve the insured of the burden of defending those suits which have no basis in fact, our cases have held that the obligation to defend arises whenever the complaint filed by the injured party may ***potentially*** come within the coverage of the policy. ^

*American States Insurance v. State Auto Insurance*, 721 A.2d 56, 59 (Pa.Super.1998) (quoting *Gedeon v. State Farm Mutual Automobile Insurance*, 410 Pa. 55, 188 A.2d 320, 321–22 (1963)). Moreover, it is the duty of the insurer to defend a claim that would support recovery until such time as it is determined that the claim is not covered under the policy. *Erie Insurance Exchange v. Transamerica Insur-*

*ance*, 516 Pa. 574, 533 A.2d 1363, 1368 (1987) (citations omitted). The "first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage. After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage." *American States Ins.*, 721 A.2d at 59 (quoting *General Accident Ins. Co. v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997) (citations omitted)). In determining the scope of the Umbrella policy, we must determine if Witco is an insured under the policy and, if so, whether First State had a duty to defend and indemnify Witco in Baptiste's personal injury action.

█ ¶ 25 First State issued an Excess/Umbrella Liability Policy to Stevens for the period in which Baptiste's injury occurred.[8] In relevant part, the Umbrella policy states:

### COVERAGE B—UMBRELLA LIABILITY INSURANCE

Coverage B is excess insurance over a self-insured retention. Coverage B applies only to the exposures which are not covered by Coverage A [Excess Liability Insurance] and are not otherwise excluded by this policy or any of the underlying policies.

1. We will pay those sums that the insured must legally pay as damages in excess of the self-insured retention because of bodily injury, property damage, personal injury, or advertising injury caused by an occurrence which occurs during the policy period of this policy.

\* \* \*

8. Stevens does not dispute the fact that the Excess Liability Coverage portion of First State's policy does not apply in this action.

9. Stevens cites to *Old Republic Insurance Co. v. Concast, Inc., et al.*, 588 F.Supp. 616 (S.D.N.Y.1984), as persuasive authority. In *Old Republic*, three employees received injuries and claimed that they were the result of a defective machine. At the time of the injuries, the contractor, because of contractual

## IV. NAMED INSURED AND INSURED

\* \* \*

b. Each of the following are also Insureds:

\* \* \*

(2) Any person or organization to whom or to which you are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to your operations, or facilities you own or use.

¶ 26 Witco is an organization to whom Stevens was obligated by virtue of the construction contract to provide insurance. Therefore, we find that Witco is an insured under First State's umbrella policy. Stevens argues that the inquiry should end here.[9] However, to do so, we would be ignoring the final clause of the section. First State's umbrella policy contains perimeters that limit the coverage of an additional insured. Specifically, Witco is an insured, "but only with respect to [Stevens'] operations, or facilities [Stevens] own[s] or use[s]." Therefore, for Witco to be an insured regarding Baptiste's injury, it must have occurred as a result of Stevens' operations.

█ ¶ 27 Here, the trial court found that Baptiste's injury did not arise out of the operations of Stevens. Whether a judge has correctly interpreted a written instrument and properly determined the legal duties that arise therefrom is a question of law for an appellate court. *Riccio v. American Republic Insurance Co.*, 550 Pa. 254, 263, 705 A.2d 422, 426 (1997).

obligation, had an umbrella insurance policy with language similar to that of First State's policy regarding the definition of additional insured under the policy. While the federal court held that the insurance policy covered the subcontractor, we can distinguish this case on the grounds that the employees were clearly injured in the operations of the contractor. The clause in the policy regarding "operations" was not an issue.

Our inquiry is whether Baptiste's injury occurred as a result of Stevens' operations. The term "operations" is not defined in the umbrella insurance contract.

¶ 28 In interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract. However, if the policy provision is ambiguous, the provision must be construed in favor of the insured and against the insurer as the drafter of the instrument. *Riccio*, 705 A.2d at 426 (citations omitted). The words of the instrument must be construed in their natural, plain, and ordinary sense. Additionally, an insurance policy, like every written instrument, must be read in its entirety and the intent of the policy is gathered from consideration of the entire instrument. *Riccio*, 705 A.2d at 426.

¶ 29 An "operation" is defined by Webster's as "a process of a practical or mechanical nature in some form of work or production" and as "a course or procedure of a productive or industrial activity." *Webster's Encyclopedic Unabridged Dictionary*, 1357 (2d ed.1996). The lower court considered the following facts in finding that Baptiste was injured outside Stevens' operations:

1. THAT BAPTISTE WAS INJURED ON THE PROPERTY OF WITCO AT THEIR PUMP HOUSE FACILITY;

2. THAT STEVENS HAD NO CONTROL OVER THE ROADWAY WHERE BAPTISTE WAS INJURED, AND;

3. THAT THE CONTRACT DID NOT PROVIDE FOR THE RESPONSIBILITY OF [STEVENS] TO MAINTAIN THE ROAD WHERE BAPTISTE FELL.

Court Opinion, at 7.

¶ 30 Additionally, we note that Witco was responsible for the control, inspection, and maintenance of all of the roadways at its Petrolia plant, including the one on which Baptiste was injured. Stip. at 6, ¶ 28. Also, Baptiste was in the process of leaving work for *personal business* when the injury occurred. Stip. at 5, ¶ 22 (emphasis added).

¶ 31 The Federal District Court for the Eastern District of Pennsylvania addressed a similar issue involving the interpretation of the term "operations" in *Czajhowski v. City of Philadelphia*, 537 F.Supp. 30, 33 (E.D.Pa.1981), *affirmed*, 688 F.2d 819 (3d Cir.Pa.1982). In *Czajhowski*, the plaintiff was injured when he fell on a staircase connecting his worksite to a parking garage. He brought a lawsuit against the city as the owner of the staircase, and the city filed a third-party complaint against the plaintiff's employer and its insurer. The federal court held that plaintiff's injuries did not arise out of his employer's operations because there was no connection to the injury and the operations of the employer. The court held further that it did not follow necessarily that his injuries were caused by his employer's acts or omissions or that they arose out of the employer's occupation and operation. Thus, the city was not covered under the employer's liability policy. *Id.*, at 32.

¶ 32 Similarly, in *Hershey Foods v. General Electric Service Co.*, 422 Pa.Super. 143, 619 A.2d 285 (1992), *appeal denied*, 536 Pa. 643, 639 A.2d 29 (1993), we held that a plant owner was not entitled to indemnification from an employer for an employee's accidental death because the death did not arise from the performance of work. The service contract between the plant owner and employer was for electrical work and stated that the employer indemnified the plant owner for damages arising out of the performance of electrical work. The employee was killed when the conveyor belt that he was sitting upon started automatically. The accident occurred during his lunch break. Since the employee was not in the process of per-

forming electrical work when the accident occurred, we held that the plant owner was not entitled to indemnification.

¶ 33 It is clear from the facts that Baptiste was not injured with respect to any of Stevens' operations. His injury occurred on a roadway while walking to leave the site on personal business. Clearly, Baptiste was not involved in his duties as a pipe fitter for Stevens nor was he in the course of any industrial activity when he was injured. Thus, Baptiste's injury occurred outside the location of Stevens' operations. *Cf. Czajhowski, supra.* Additionally, Witco contracted Stevens to perform renovations to the pump house. Baptiste's injury did not occur in an action in furtherance of the construction contract. In short, Baptiste was not engaging in Stevens' operations when he was injured. *Cf. Hershey Foods, supra.*

¶ 34 We find the circumstances to be too remote for Baptiste's injury to be considered a result of Stevens' operations or facilities Stevens owns or uses merely because Baptiste worked for Stevens and the fall occurred while Baptiste was employed.

¶ 35 We find that the lower court did not err in finding that Witco was not an insured regarding Baptiste's injury. Thus, the lower court properly granted First State's motion for summary judgment, despite the fact that the court's decision regarding the application of the doctrine of **res judicata** was erroneous.

¶ 36 Judgment affirmed.