HARBOR INSURANCE COMPANY

v.

**Andrew L. LEWIS and Joseph L. Castle, Trustees for Reading Company and Edward and Patricia Scarborough and City of Philadelphia.**

**Civ. A. No. 81–4205.**

United States District Court,
E.D. Pennsylvania.

April 26, 1983.

Michael D. Gallagher, Philadelphia, Pa., for plaintiff.

E. Perry Warner, Philadelphia, Pa., for Reading Co.

James E. Beasley, Philadelphia, Pa., for Scarborough.

Jill A. Douthett, Deputy City Sol., Philadelphia, Pa., for City.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

HUYETT, District Judge.

This diversity suit originated as a declaratory judgment action brought by petitioner Harbor Insurance Company (Harbor), seeking a determination of the extent of its obligations owing to Reading Railroad Company (Reading) in connection with a verdict rendered against Reading and the City of Philadelphia. That verdict was returned by a jury in the Court of Common Pleas of Philadelphia in an action brought by respondents, Edward and Patricia Scarborough. The suit was based upon an accident in which Edward Scarborough suffered severe injuries after being run over by a train operated by Reading in an area located near a fence that the City was found to have negligently maintained. Apparently the young boy wandered through the fence and on to the tracks, fell off and landed under the train. The Scarboroughs brought the action against Reading, and Reading joined the City as an additional defendant. The jury found that Reading and the City were

jointly and severally liable and rendered a verdict of over three million dollars for the Scarboroughs.

After Harbor initiated this action, the City sought and was granted leave to intervene as a respondent, so that it might obtain a determination of its respective rights and duties regarding the Scarborough verdict. Specifically, the City seeks a declaration that it was covered under the additional insured provision of the Harbor policy for its losses arising from the Scarborough action.

This provision, endorsement number 8 to the Harbor policy, provides:

ADDITIONAL INSUREDS

IT IS AGREED THAT THE INSURANCE AFFORDED BY THIS POLICY SHALL APPLY TO THE FOLLOWING ADDITIONAL INSUREDS BUT ONLY TO THE EXTENT OF LIABILITY RESULTING FROM OCCURRENCES ARISING OUT OF NEGLIGENCE OF READING COMPANY AND/OR ITS WHOLLY OWNED SUBSIDIARIES:

PASSENGER SERVICE IMPROVEMENT CORPORATION OF PHILADELPHIA.

CITY OF PHILADELPHIA.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.

COUNTY OF MONTGOMERY.

STATE OF PENNSYLVANIA.

COUNTY OF CHESTER. STATE OF PENNSYLVANIA.

COUNTY OF BUCKS. STATE OF PENNSYLVANIA.

COMMONWEALTH OF PENNSYLVANIA. UNITED STATES OF AMERICA.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION COMPACT.

COUNTY OF DELAWARE, STATE OF PENNSYLVANIA.

The City contends that the Scarborough accident was an occurrence "arising out of negligence of Reading Company," and, therefore, it is covered for any liability resulting from this occurrence. Harbor argues that this endorsement only provides coverage for vicarious liability of additional insureds, where the additional insured is found liable for the negligence of the named insured. Accordingly, Harbor posits that the City is not covered for liability resulting from its own negligence. It is clear that the City's joint and several liability was not based upon a vicarious liability theory. Rather, the jury found both Reading's and the City's negligence to be contributing and concurrent causes of the Scarborough's injuries. Therefore, the controlling question is whether endorsement number 8 provides for the City's liability resulting from its own negligence in the Scarborough accident. At this time, all the claims of the parties have been settled except the City's claim against Harbor.

Following a non-jury trial, I make the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

I. *Findings of Fact.*

The parties have submitted an extensive stipulation of uncontested facts, which I have approved and now adopt by reference as part of my findings. In addition, I make the following findings of fact:

1. The deposition of Charles Norman was offered and admitted into evidence. Norman was a vice-president of Harbor at the time that the policy in question was issued and was the underwriter in charge of placing this policy. I have reviewed the deposition testimony in full, and I reject those portions of the testimony that place a legal interpretation on endorsement number 8. The City did not impeach the remainder of the testimony which I adopt and approve.

2. Harbor did not draft the language of endorsement number 8. This language was taken from a similar endorsement in a policy issued by Travelers Indemnity Company to Reading in 1968, which expired before the Harbor policy was issued.

3. The language of endorsement number 8 was included in the policy by Reading with Harbor's consent.

4. Harbor was not requested to extend coverage to the City for claims based upon the City's own negligence, and Norman did not intend to do so by including endorsement number 8 in the policy. Rather, Norman intended this endorsement to be a routine endorsement issued to cover additional insureds for derivative liability that might result from the acts of the named insured, with no additional premium being charged for the inclusion.

5. Harbor called Peter Liebert, Esquire, a senior partner of the law firm of Liebert, Short, Fitzpatrick & Lavin, to testify as an expert witness as to the customary practices of the insurance industry with regard to additional insured endorsements. Mr. Liebert has had considerable experience in this field and I accept his testimony as an expert. Based upon the candid and forthright nature of his testimony, I find him to be a credible witness. His testimony was not impeached by the City.

6. In the insurance industry, additional insured provisions have a well established meaning. They are intended to protect parties who are not named insureds from exposure to vicarious liability for acts of the named insured. These provisions are employed in countless situations in the industry, including such simple circumstances as those involving landlord and tenant relations, where the landlord asks or requires the tenant to procure insurance for the landlord for liability resulting from the tenant's activities.

7. The insurance industry places this meaning on additional insured provisions because insurers will not increase and alter the kind of risks insured against without the charge of additional premiums. In this kind of provision, the risks have not been increased or altered, for the insurer is only insuring the additional insureds against vicarious liability for acts of the named insured.

8. In the customary practices of the insurance industry, endorsement number 8 would be viewed as a typical additional insured provision, which protects the additional insured for the vicarious liability of the named insured only, and not for the acts of the additional insured.

## II. Conclusions of Law.

Before the trial, the City filed a motion *in limine,* contending, *inter alia,* that the additional insured endorsement was unambiguous and, therefore, evidence extrinsic to the Harbor policy was inadmissible to prove the intent of Harbor and Reading in including the endorsement in the policy. In ruling on the motion, I found that the endorsement was ambiguous, in that reasonably intelligent people, considering the endorsement in light of the entire policy, would honestly differ as to its meaning. *See Celley v. Mutual Benefit Health and Accident Ass'n.,* 229 Pa.Super.Ct. 475, 481–82, 324 A.2d 430, 434 (1974), and cases cited therein. Therefore, I allowed extrinsic evidence of the circumstances surrounding the making of the contract to be introduced at trial, including evidence of the purpose of the insurance, its subject matter and the situation of the parties. *See id.* In this regard, I held that the opinion of Mr. Liebert, an expert witness, could be introduced to show the custom and practice in the insurance industry regarding these provisions, as relevant to the factors just listed. However, Mr. Liebert was not permitted to testify as to the meaning of endorsement number 8, since such testimony would not assist the trier of fact to understand the evidence or determine a fact in issue, as required under Federal Rule of Evidence 702.

Also I admitted evidence of the subjective intent of the parties to the contract, where it was not shown that this intent was communicated to the other party to the contract. Harbor and Reading were not attempting to alter the meaning of the endorsement but to assist me in determining what the parties intended when they included the endorsement in the policy. *See Eggleston v. Dudley,* 257 F.2d 398, 400 (3d Cir.1958) (applying Pennsylvania law).[1]

1. The parties agree that Pennsylvania law applies, and I find no reason to differ.

Unlike *Celley, supra,* and other cases cited by the City, the parties to the contract were not in disagreement as to the matter in issue. Rather, the testimony adduced at trial and the stipulation of uncontested facts clearly show that both parties agree that the purpose of the additional insured endorsement was to cover the additional insureds for vicarious liability alone. Their self-interests in so asserting is a matter of credibility for the trier of fact to consider. *See Arnold v. Great Atlantic & Pacific Tea Co., Inc.,* 502 F.Supp. 331, 335 (E.D.Pa. 1980). The same can be said for any differences in the specifics of what the parties intended through this endorsement.[2]

Further, the City stipulated that it did not rely upon the Harbor policy in making its own insurance decisions, and it has not demonstrated any other possible detrimental reliance upon a different interpretation of the contract. *See American Employers Insurance Co. v. St. Paul Fire and Marine Insurance Co., Ltd.,* 594 F.2d 973, 977–78 (4th Cir.1979); *Bey v. Muldoon,* 223 F.Supp. 489, 492 (E.D.Pa.1963). Rather, it seems as if the City seeks an unexpected windfall for which it never bargained. On these facts, there exists no reason to rely solely upon the objective manifestation of assent by the parties, under the analysis set forth in *Brokers Title Co., Inc. v. St. Paul Fire and Marine Insurance Co.,* 610 F.2d 1174, 1180–81 (3d Cir.1979).

■■■ The City next contends that the evidence of the parties' subjective intent should not be controlling on my interpretation of the provision. *See Marden v. International Ass'n. of Machinists and Aerospace Workers,* 576 F.2d 576 (5th Cir.1978). Insofar as the parties may have stipulated as to the legal effect of admitted facts, statements of the parties' intent are not controlling on a court. *See Id.* at 580. However, when confronted with an ambiguous provision, my duty is to gather the parties' mutual intent so as to remove the ambiguity. *Arnold, supra,* 502 F.Supp. at 335; *Celley, supra,* 229 Pa.Super.Ct. at 481, 324 A.2d 430. It cannot be denied that sufficiently credible evidence of mutual intent is, at the very least, highly relevant to the interpretation of a contact. *See Arnold, supra.* Thus, I will consider this evidence along with the other evidence presented and the language of the entire contract.

The City reads endorsement number 8 strictly, as providing additional insured coverage for "occurrences arising out of the negligence of Reading Company." It contends that the Scarborough verdict constitutes a finding that Reading was negligent and, therefore, the accident is an occurrence arising out of the negligence of Reading. In this regard, the City relies heavily upon the instructions given to the jury in the Scarborough case, contending, *inter alia,* that, but for Reading's negligence, the City would not have been held liable.

Regardless of the theories that the jury may have relied upon to find Reading negligent, it is clear that they found Reading and the City to be jointly and severably liable. The jury was not presented with a theory of vicarious liability on the part of the City. Thus, the City's arguments aside, there is no doubt that it was held liable for its own negligence, not that of Reading's. Furthermore, the City ignores that, under its analysis, but for the City's negligence, Reading would not have been liable. More to the point, however, these arguments disregard the basic question of these proceedings, which is whether endorsement number 8 provides additional coverage for the City's liability resulting from its own negligence.

■■■ I find that the City's interpretation of the contract is overly technical. To ascertain the intent of the parties where a

---

**2.** The parties have stipulated that Reading's intent in including endorsement number 8 in the Harbor policy was to fulfill a requirement set forth in the Purchase of Service Contract entered into between Reading and the City. While it is true that the scope of coverage under endorsement number 8 differs in certain regards, it is clear that Reading's intent was not to procure coverage from Harbor for the City's own active negligence, regardless of whatever other circumstances may or may not have been intended to be covered by the indemnification agreement.

provision is ambiguous, or even when it seems unambiguous, a court must read the provision in light of the entire contract. *Treasure Craft Jewelers, Inc. v. Jefferson Insurance Co.*, 431 F.Supp. 1160, 1160 (E.D. Pa.1977), *aff'd*, 583 F.2d 650 (3d Cir.1978) (applying Pennsylvania law). Thus, a party cannot lift one clause out of an insurance contract and attach a meaning to it considered in isolation. *Id.* Here, the City places undue emphasis on the word "occurrence" as it appears in endorsement number 8. A fair reading of the entire contract, which defines the word and employs it often, reveals that the purpose of using that word in endorsement number 8 is to place limitations and other restrictions on losses covered by Harbor. Therefore, where the endorsement states that additional insured coverage is provided, "but only to the extent of liability resulting from occurrences arising out of negligence of Reading Company," the insertion of the phrase "occurrences arising out of" is meant to incorporate these limitations on Harbor's duties. Accordingly, but for the imposition of these limitations, it is clear that the provision would provide coverage to the City, "but only to the extent of liability resulting from [the] negligence of Reading Company."

Moreover, endorsement number 8 must be read in its entirety. The endorsement does not provide blanket coverage to the additional insureds where Reading is held negligent; it provides "the insurance afforded by this policy." The insurance provided by the policy was strictly tied to the actions of the named insured. Harbor issued as railroad liability policy, not a policy that covers all the various acts of the additional insureds whenever an "occurrence" arises in which both an additional insured and the named insured are found jointly negligent. This is particularly true where no additional premium is charged for the clause. It would be unreasonable to assume that Harbor intended to increase the risks insured against without exacting more consideration. It would be even more unreasonable to assume that Harbor intended to open itself up to a wide variety of risks, with the sole limitation on those risks being that they must arise out of an "occurrence" in which Reading was held negligent.

In this regard, the City has offered no reason, rational or otherwise, why Harbor and Reading would want to extend coverage to the City in cases where both it and Reading are found negligent. It is obvious why Reading wanted insurance to cover the City for vicarious liability. First, Reading contracted to do so for situations such as this, where it could do so without any additional cost. Second, because the risks are not increased, Reading could do so without incurring additional costs. However, Reading certainly would have incurred further insurance expenses if it were to have procured the kind of coverage that the City contends it has. Simply stated, why would Reading do so without obtaining additional consideration from the City? The City has failed to even address this point, which leads me to conclude that the parties did not intend to extend the risks covered by the policy.

■ Of course, the evidence of the customary practices in the insurance industry is quite probative of the parties' intent. I cannot conclude that Harbor would have agreed to the addition of endorsement number 8 into the policy if it believed that it was extending coverage for the City's concurrent acts of negligence, unless it requested further premiums and details concerning the scope of the City's operations that may fall under the policy. On these facts, it would be more reasonable to conclude that, pursuant to the custom and usage of the industry as to how these provisions are normally interpreted, it believed that it was issuing a typical additional insured endorsement. Where the City claims no reliance on a different interpretation, there is not reason to look further than this. *See Bey, supra,* 223 F.Supp. at 492.

■ Accordingly, based upon the language of the Harbor policy and endorsement number 8, the customary practices of the insurance industry regarding additional insured clauses and the evidence of the intent of Reading and Harbor when they

included this endorsement in the policy, I conclude that the City was not covered for liability resulting from its own negligence under the endorsement. In so ruling, I note that the parties other contentions in this action are no longer relevant. An appropriate order follows.

### ORDER

NOW, April 26, 1983, following a non-jury trial held March 29, 1983, upon consideration of the evidence introduced at trial and based upon the foregoing findings of fact and conclusions of law, IT IS ORDERED that JUDGMENT IS ENTERED FOR THE PETITIONER HARBOR INSURANCE COMPANY AND AGAINST INTERVENOR–RESPONDENT CITY OF PHILADELPHIA.