## ANDREW L. YOUNGQUIST, INC. d/b/a Birtcher Construction Services, Appellant,

v.

## CINCINNATI INSURANCE COMPANY, Respondent.

No. C8–00–1773.

Court of Appeals of Minnesota.

April 24, 2001.

---

Mark A. Gwin, Andrea E. Reisbord, Cousineau, McGuire & Anderson, Chartered, Minneapolis, MN, (for appellant).

William L. Moran, Patrick J. Kelly, Murnane, Conlin, White & Brandt, P.A., St. Paul, MN, (for respondent).

Considered and decided by KALITOWSKI, Presiding Judge, SCHUMACHER, Judge, and PORITSKY, Judge.

## OPINION

BERTRAND PORITSKY, Judge *

Following the district court's grant of summary judgment in its favor, appellant insured contends that the district court erred in limiting its recovery of damages and attorney fees to $8,866.58. Respondent insurance company filed a notice of review challenging the district court's grant of summary judgment in favor of the insured. Because the insurer breached its duty to defend and indemnify the insured, and the district court's award of costs and attorney fees was proper, we affirm in part. Nonetheless, we remand for a factual finding as to whether the insured paid its insurance deductible before or after tendering its defense to the insurer.

## FACTS

The parties do not dispute the material facts. Appellant Andrew L. Youngquist, Inc., d/b/a Birtcher Construction Services (Birtcher), contracted to build a movie theater in Coon Rapids. Birtcher entered into a subcontract with Comm–Tech Electrical Contractors, Inc. (Comm–Tech), to provide electrical work on the theater project. The subcontract required Comm–Tech to obtain primary commercial general-liability insurance covering Birtcher.

Comm–Tech purchased an endorsement to its commercial general-liability insurance policy, naming Birtcher as an "Additional Insured":

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

AUTOMATIC ADDITIONAL INSURED—CONTRACTOR

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. SECTION II—WHO IS AN INSURED is amended to include:

2.e. The person or organization shown in the Schedule *but only with respect to liability arising out of your ongoing operations performed for that insured,* HEREINAFTER REFERRED TO AS ADDITIONAL INSURED.

SCHEDULE

Any person or organization for whom you are required in a written contract * * * where there is a certificate of insurance showing that person or organization as an ADDITIONAL INSURED under this policy.

(Emphasis added.)

A provision in the subcontract stated that Comm–Tech would not indemnify Birtcher for such damages as were determined by a court of competent jurisdiction to be due either to Birtcher's sole negligence or willful misconduct:

[Comm–Tech] shall not be obligated under this agreement to indemnify [Birtcher] with respect to damages which are ultimately determined by a court of com-

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI § 10.

petent jurisdiction to be due to the sole negligence or willful misconduct of [Birtcher].

On November 16, 1997, an electrician employed by Comm–Tech was injured while working at the theater construction site. The electrician sued Birtcher and two other companies for his injuries.[1] On August 4, 1998, Birtcher tendered defense of the Klitzke injury claim to respondent Cincinnati Insurance Company (Cincinnati), from whom Comm–Tech had purchased its commercial general-liability insurance policy. Cincinnati rejected Birtcher's tender.

Birtcher brought a declaratory action against Cincinnati to compel it to defend and indemnify Birtcher. The district court heard cross-motions for summary judgment. In its order, the district court granted summary judgment in favor of Birtcher, but reserved the issue of Birtcher's request for attorney fees, costs and disbursements, and directed Birtcher to file supporting affidavits.

Birtcher's attorney submitted affidavits to the district court outlining Birtcher's damages, attorney fees, and costs, accompanied by corroborating billing statements. Birtcher requested a total of $49,452.93.[2] Cincinnati opposed reimbursement in this amount, arguing that Birtcher's own insurer, Reliance Insurance Company (Reliance), paid virtually all of Birtcher's costs and legal expenses. Birtcher countered by furnishing evidence that it had incurred a $5,000 out-of-pocket deductible and approximately $3,380 in unreimbursed fees and expenses. On August 15, 2000, the district court awarded Birtcher $8,866.58, reflecting Birtcher's $5,000 deductible and $3,380.33 plus $250 in unpaid fees and expenses.[3]

Birtcher contests the amount awarded by the district court, and Cincinnati challenges the district court's grant of summary judgment in favor of Birtcher on the issue of coverage.

## ISSUES

1. Did the district court err in granting Birtcher summary judgment on the issue of coverage?

2. Did the district court improperly limit Birtcher's recovery to its out-of-pocket expenses incurred by Birtcher in the underlying claim?

3. Did the district court abuse its discretion in determining the amount of attorney fees?

4. Is Birtcher entitled to attorney fees on appeal?

1. The electrician, Milan Klitzke, did not name Comm–Tech in his suit, because Klitzke was precluded from doing so under the exclusivity provisions of the Minnesota Workers' Compensation Act. See Minn.Stat. § 176.031 (1998) (stating employer's liability under workers' compensation statute is exclusive).

2. In its brief, Cincinnati asserts that Birtcher's claim is $47,167.32, deriving this figure from the March 2, 2000, affidavit of Birtcher's attorney. Birtcher's attorney, however, filed a supplementary affidavit dated March 24, 2000, which gives a figure of $49,452.93.

3. The district court's calculations appear to include Birtcher's $5,000 deductible, plus $3,380.33 in unpaid attorney fees, plus $250 stemming from costs incurred on March 24, 2000, the date Birtcher's attorney signed his supplemental affidavit. Using these figures, the district court arrived at $8,704.85. The district court then reasonably factored in an interest rate of 5% per annum from March 24, 2000, through August 7, 2000, totaling $161.73. Adding this amount to $8,704.85 results in a total sum of $8,866.58. We are uncertain, however, as to how the district court arrived at its initial figure of $8,704.85, since $5,000 plus $3,380.33 plus $250 gives a sum of $8,630.33, not $8,704.85.

5. Should Birtcher's motion for appellate admission of evidence be granted?

## ANALYSIS

On appeal from summary judgment, this court asks whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn.1996). In making this determination, we view the evidence in the light most favorable to the party against which summary judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

### 1. Duty to Defend

"[T]he interpretation of insurance contract language is a question of law as applied to the facts presented." *Meister v. Western Nat'l Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn.1992) (citation omitted); *see Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978). "Insurance coverage issues are questions of law for the court." *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn.1992) (citation omitted). Where there is no dispute as to the material facts, this court independently reviews the district court's interpretation of the insurance contract de novo. *Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn.1994).

 The language of the policy must be given its ordinary and usual meaning so as to give effect to the intention of the parties as it appears from the contract. *Dairyland Ins. Co. v. Implement Dealers Ins. Co.*, 294 Minn. 236, 244–45, 199 N.W.2d 806, 811 (1972) (citations omitted); *see Fillmore v. Iowa Natl. Mut. Ins. Co.*, 344 N.W.2d 875, 877 (Minn.App.1984) (reviewing an insurance policy to ascertain and give effect to the parties agreement). Doubts as to coverage must be resolved against the insurer issuing the policy in favor of coverage, and the burden rests with the insurer to prove the claim is not covered. *Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 390 (Minn.1979); *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 36 (Minn.1979).

### a. Coverage Under the Additional Insured Endorsement

The parties agree that Comm–Tech purchased an endorsement to its commercial general-liability insurance policy naming Birtcher as an additional insured. Cincinnati argues that the language "*arising out of* [Comm–Tech's] ongoing operations performed for [Birtcher]" limits its liability to cover only cases in which Comm–Tech is primarily liable and Birtcher is vicariously liable for any fault of Comm–Tech. (Emphasis added.) The provision did not, Cincinnati argues, extend coverage to liability arising exclusively out of Birtcher's own operations.

However, the phrase "arising out of" has been given a broad meaning. *Faber v. Roelofs*, 311 Minn. 428, 436, 250 N.W.2d 817, 822 (1977), is instructive on this issue. In *Faber*, a school bus owned by Roelofs and hired by the school district ran over a student. *Id.* at 430, 250 N.W.2d at 819. The school district was listed as an additional insured under Roelofs's auto-liability policy with his insurer, Mutual Service Casualty Insurance Company. *Id.* at 430–31, 250 N.W.2d at 819. The pertinent language of the insurance contract stated that the policy covered damages "arising out of the ownership, maintenance or use of the [school bus]." *Id.* at 436, 250 N.W.2d at 822. In the underlying negligence action, the driver and Roelofs, as owner, were both absolved of negligence, but the school district was found negligent based on its established bus routes and bus-loading procedures. *Id.* at 436, 250 N.W.2d at 822. Mutual argued that since neither the driv-

er nor Roelofs were negligent and since the school district was found independently negligent, the student's injuries did not "arise out of the use" of the school bus. *Id.*

The supreme court disagreed and held that a " '[b]ut for' causation, i.e., a cause and result relationship, is enough to satisfy the provision of the policy." *Id.* at 436–37, 250 N.W.2d at 822 (quotation omitted). The court construed the phrase "arising out of" as "comprehensive and broad in service," extending to a causal connection with use or maintenance of the insured vehicle. *Id.* at 436, 250 N.W.2d at 822 (quotation omitted). Consequently, the *Faber* court ruled that the school district, as an additional insured, was covered by Mutual. *Id.* at 438, 250 N.W.2d at 823.

In *Hormel Foods Corp. v. Northbrook Prop. & Cas. Ins. Co.,* 938 F.Supp. 555, 556 (D.Minn.1996), *aff'd,* 131 F.3d 143 (8th Cir. 1997), Hormel leased a hog-processing facility to Quality Pork Products (QPP). The lease required QPP to include Hormel as an additional insured on QPP's liability policy with Northbrook. 938 F.Supp. at 556. QPP's liability policy covered losses " 'arising out of the ownership, maintenance or use' of the leased premises." *Id.* A QPP employee was fatally injured by a machine on the leased premises. *Id.* A wrongful-death action was brought against Hormel, alleging that the machine was negligently designed. *Id.* Northbrook argued that the underlying suit did not arise out of Hormel's ownership, maintenance, or use of the premises. *Id.* at 556. Northbrook claimed that the additional-insured provision only protected Hormel from the negligence of QPP, much as, in the present case, Cincinnati claims its provision covers Birtcher only for liability arising from the fault of Comm–Tech. *See id.*

The court held that Northbrook's policy covered Hormel's liability for negligent design. *Id.* at 558. Citing Minnesota cases, the court construed the phrase "arising out of":

> This standard is not one of proximate causation. Rather, "but for" causation satisfies the requirements of an insurance policy which specifies that only liabilities "arising out of the use" are covered. Therefore, if there is a causal relationship between the place covered by insurance and the acts giving rise to legal liability, the liability is covered also.

*Id.* at 557 (citations omitted).

The phrase arising out of has also been described as meaning originating from, or having its origin in, growing out of, or flowing from. *See, e.g., Associated Indep. Dealers, Inc. v. Mutual Serv. Ins. Cos.,* 304 Minn. 179, 182, 229 N.W.2d 516, 518 (1975) (citation omitted) (dicta).

■ No published case in Minnesota is exactly on point with respect to the circumstances before us, but this court's unpublished decision, *K–Mart Corp. v. Clean Sweep, Inc.,* No. C9–97–703, 1997 WL 666088 (Minn.App. Oct.28, 1997), is instructive. Although this court's unpublished decisions are not precedential, they may have persuasive value. *Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 800 (Minn. App.1993). In the present case, the district court discussed *K–Mart* in reaching its determination, and both parties cited *K–Mart* in their briefs to this court. In *K–Mart,* Clean Sweep contracted to remove snow from K–Mart's parking lot. *K–Mart,* 1997 WL 666088, at *1. As a result of an indemnity provision in its contract, Clean Sweep carried a liability policy with Milwaukee Mutual, which named K–Mart as an additional insured under Clean Sweep's liability policy for liability "arising out of" Clean Sweep's "ongoing operations

performed for K–Mart." *K–Mart,* 1997 WL 666088, at *1. A customer sued Clean Sweep and K–Mart for injuries from a slip and fall in the parking lot. *K–Mart,* 1997 WL 666088, at *1. Milwaukee denied coverage to K–Mart, which sought and obtained a declaratory judgment against Milwaukee. *K–Mart,* 1997 WL 666088, at *1. We affirmed that K–Mart was covered under Milwaukee's policy because the claimed liability arose out of Clean Sweep's ongoing operations of snow removal, and coverage was not limited to vicarious liability for Clean Sweep's acts. *K–Mart,* 1997 WL 666088, at *1. Cincinnati argues that *K–Mart* is distinguishable from the case before us because Klitzke never brought a negligence claim against Comm–Tech, whereas in *K–Mart,* the injured customer sued both Clean Sweep and K–Mart. Klitzke, however, did not sue Comm–Tech because of the exclusivity provisions under the Minnesota Workers' Compensation Act. This distinction does not affect interpretations of the coverage provisions.

In short, on the undisputed facts there is a causal connection between Klitzke's injuries and Comm–Tech's ongoing operations: but for Comm–Tech's operations, Klitzke would not have been injured.

### b. Effect of the Subcontract

■ Cincinnati next argues that the indemnification provision in Birtcher and Comm–Tech's subcontractor agreement removes Klitzke's injury claim from the scope of Cincinnati's endorsement coverage of Birtcher. The subcontractor agreement indemnification provision reads:

> [Comm–Tech] shall not be obligated under this agreement to indemnify [Birtcher] with respect to damages which are ultimately *determined by a court of*

competent jurisdiction to be due to the *sole negligence* or willful misconduct of [Birtcher].

(Emphasis added.) As conceded by Cincinnati at oral argument, however, no *court* determined that Birtcher was negligent, solely or otherwise, because Birtcher settled with Klitzke in the underlying negligence suit. Therefore, the above provision is not operative under the present circumstances. Moreover, our reasoning here has the effect of encouraging insureds like Birtcher, facing a negligence claim, to settle the dispute instead of litigating it.

We conclude that Cincinnati's insurance coverage of Birtcher extended to include the Klitzke injury claim brought against Birtcher. Cincinnati breached its contractual obligation to defend and indemnify Birtcher, and the district court properly granted summary judgment in favor of Birtcher on the issue of coverage.

### 2. Recovery Limited to Birtcher's Out of Pocket Expenses

■ Birtcher asserts that the district court erred in limiting its recovery to its out-of-pocket $5,000 deductible (and attorney fees, which will be discussed separately). *See Westling Mfg. Co. v. Western Nat'l Mut. Ins. Co.,* 581 N.W.2d 39, 48 (Minn.App.1998) ("An insured may recover from an insurer 'damages resulting from breach of contract by the insurer's failure to defend.'" (citation omitted)), *review denied* (Minn. Sept. 22, 1998). We review this issue as a matter of law subject to de novo review. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). Birtcher argues that the district court should have required Cincinnati to pay Birtcher the entire $10,000 paid to settle the Klitzke injury claim.[4] We disagree.

---

**4.** In October 1999, Birtcher reached a settle- ment with Klitzke, agreeing to pay Klitzke

It is not clear from Birtcher's argument on this issue whether Birtcher asserts that it is entitled to recover and retain the full amount of the Klitzke injury settlement, or whether it is merely acting as a conduit by passing any recovery in excess of its deductible to its own insurer, Reliance. At one point in its brief, Birtcher refers to the district court's conclusion that it (Birtcher) was the real party in interest; later in its brief, Birtcher argues that the district court's "refusal to reimburse [Birtcher] for the settlement" should be reversed. However, elsewhere in its brief, Birtcher argues that the law does not "limit or preclude an *insurer's* right to reimbursement from another insurer." (Emphasis added.) Regardless of whether Birtcher intends to keep the amount recovered in excess of its deductible, or pass it on to Reliance, Birtcher's arguments are not persuasive.

■ If Birtcher is to keep the amount recovered in excess of its deductible, the result will be an impermissible double recovery. It is a matter of basic insurance law that an insured is entitled to no more than its loss:

> Almost all types of insurance are designed to provide no more than reimbursement for an insured. Moreover, it is now a generally accepted fundamental tenet of insurance law that opportunities for net gain to an insured through the receipt of insurance proceeds exceeding a loss should be regarded as inimical to the public interest.

Robert E. Keeton & Alan I. Widiss, *Insurance Law* § 3.1(a), at 135 (1988). The windfall that Birtcher would receive were it allowed to recover any amount in excess of its deductible would be particularly inappropriate since Birtcher did not pay any premium for the additional insured endorsement. *Cf. Nordby v. Atlantic Mut.*

*Ins. Co.*, 329 N.W.2d 820, 822 (Minn.1983) (indicating court looked at the payment of premiums in determining coverage).

If, on the other hand, Birtcher is urging that Reliance is entitled to the amount in excess of the deductible, its arguments run head-on into a line of Minnesota caselaw to the contrary.

■ Separate insurers with a mutual insured have an independent duty to cover the insured. *See Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 167 (Minn.1986) ("If either insurer undertakes the defense, it is responsible for its own defense costs and cannot later seek reimbursement from the other."); *Nordby*, 329 N.W.2d at 824 ("An insurer has no right of action against another insurer to recover the cost of defending the insured, since there is no contractual obligation between insurers."); *St. Paul Sch. Dist. No. 625 v. Columbia Transit Corp.*, 321 N.W.2d 41, 48 (Minn.1982) ("No contractual obligation exists to make one insurer accountable to the other for a breach of its independent obligation to the insured." (quotation & citation omitted)); *Iowa Nat'l Mut. Ins. Co. v. Universal Underwriters Ins. Co.*, 276 Minn. 362, 367, 150 N.W.2d 233, 236–37 (1967) ("The obligation to defend is a separate undertaking from the duty to provide coverage and pay a judgment."). In *Jostens*, the supreme court distilled the reasoning found in *Nordby, St. Paul School District*, and *Iowa National:*

> The rationale is that there is no contractual relationship between the two insurers, and the insurer assuming the defense has no cause to complain because it * * * is only doing what it agreed and was paid a premium to do.

*Jostens*, 387 N.W.2d at 166.

Birtcher argues these cases are distinguishable because they involved one insur-

$10,000 plus $149.04 in interest, for a total settlement of $10,149.04.

er seeking reimbursement from another insurer, whereas in this case Birtcher is an insured, not an insurer. Even though the supreme court has allowed recovery in actions between an insured and an insurer, in the present case, the insured did not have to defend itself. *Cf. Jostens,* 387 N.W.2d at 166–67. Unlike the insured in *Jostens* who "paid its own way," and defended itself when its two insurers refused its tender, *id.* at 165, Birtcher incurred no costs beyond its $5,000 deductible because Reliance undertook Birtcher's defense in the underlying claim. The district court properly limited Birtcher's recovery to the out-of-pocket deductible.

■ Birtcher argues that public policy mandates that Cincinnati be held accountable for its breach of contract. Birtcher contends that *Nordby* and its predecessors serve to reward Cincinnati's breach by punishing insurers, like Reliance, who live up to their contractual obligation. Birtcher cites caselaw from other jurisdictions, espousing the position that one insurer should not profit from its wrongful failure to defend while another insurer is punished for performing its duty. *See, e.g., Farm & City Ins. Co. v. United States Fid. & Guar. Co.,* 323 N.W.2d 259, 261 (Iowa 1982); *Farmers Ins. Group v. Progressive Cas. Ins. Co.,* 84 Mich.App. 474, 269 N.W.2d 647, 653 (1978); *Church Mut. Ins. Co. v. Smith,* 509 N.W.2d 274, 277 (S.D.1993). Birtcher's public-policy argument, while appealing, cannot overcome Minnesota's express preference that each insurer fulfill its independent duty to cover a mutual insured. *See, e.g., Iowa Nat'l,* 276 Minn. at 367, 150 N.W.2d at 237 (expressing Minnesota's preference for a contract-based approach because insurer's obligation to defend "is a contractual right of the insured irrespective of other insurance and irrespective of primary or excess coverage" (citation omitted)).

In addition, although Minnesota recognizes that an insurer may recover defense costs paid on behalf of an insured pursuant to a "loan-receipt agreement," no such agreement exists between Birtcher and Reliance. *See Jerry Mathison Constr., Inc. v. Binsfield,* 615 N.W.2d 378, 381 (Minn.App.2000) ("The purpose of the loan-receipt agreement between an insurer and its insured is to allow a subsequent action to be brought in the name of the insured even when the insurer has in effect fully indemnified the insured for the loss." (citation omitted)). Had a loan-receipt agreement existed between Reliance and Birtcher, Reliance could have proceeded against Cincinnati in Birtcher's name to recover the amounts Reliance had paid. At no time, however, did Birtcher and Reliance enter into an agreement for Reliance to loan Birtcher the funds needed to settle the underlying Klitzke injury claim. The district court properly limited Birtcher's recovery to its out-of-pocket $5,000 deductible.

### 3. Attorney Fees

■ Birtcher argues that the district court should not have limited its recovery of attorney fees. A party may recover attorney fees and costs incurred in obtaining a declaratory judgment against an insurer for breach of its duty to defend. *Morrison v. Swenson,* 274 Minn. 127, 138, 142 N.W.2d 640, 647 (Minn.1966); *see American Standard Ins. Co. v. Le,* 551 N.W.2d 923, 927 (Minn.1996) (restating rule that attorney fees are recoverable in declaratory judgment action only if there is a breach of a contractual duty, "usually by wrongfully refusing to defend the insured"). An insured may recover attorney fees from its insurer if such fees are incurred defending itself against claims by a third party when the insurer has a contractual duty to defend the insured, but

has refused to do so. *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 316 (Minn.1995). The district court determined that Birtcher could recover unreimbursed attorney fees for (1) the declaratory judgment action against Cincinnati, and (2) the underlying Klitzke injury claim.

 We review the district court's award of attorney fees and costs under an abuse-of-discretion standard. *Radloff v. First Am. Nat'l Bank*, 470 N.W.2d 154, 156 (Minn.App.1991), *review denied* (Minn. July 24, 1991). The reasonable value of attorney fees is a question of fact, and we must uphold the district court's findings on that issue unless they are clearly erroneous. *Amerman v. Lakeland Dev. Corp.*, 295 Minn. 536, 537, 203 N.W.2d 400, 400–01 (1973). Here, the district court calculated Birtcher's attorney fees at $3,380.33, plus $250. Evidence from the record—in the form of affidavit testimony submitted by Birtcher's attorney—supports the district court's figure. In his affidavit, Birtcher's attorney indicated that Birtcher had a total of $3,380.33 plus $250 in unbilled fees not paid by Reliance.[5] Birtcher argues that the district court should have granted the remainder of its fees (approximately $33,000). The district court, however, found that these remaining attorney fees and costs were paid by Reliance, and

therefore did not constitute proven damages. Applying the reasoning from the preceding section, we conclude that because Reliance already compensated Birtcher for all attorney fees incurred below, excluding $3,380.33 plus $250, the district court did not abuse its discretion in limiting Birtcher's recovery of attorney fees to these amounts.[6]

### 4. Attorney Fees on Appeal

 In its brief, Birtcher argues that it is entitled to attorney fees and expenses incurred in connection with this appeal. A party seeking attorney fees on appeal must submit a separate, written motion. Minn. R. Civ.App. P. 139.06, subd. 1; *see also* Minn. R. Civ.App. P. 139.03 (taxation of costs and disbursements). Because Birtcher failed to submit a separate, written motion, we do not address the issue of attorney fees incurred on appeal.

### 5. Timing of Birtcher's Deductible Payment

 Respondent Cincinnati argues that the district court erred in awarding Birtcher $5,000 as reimbursement for the deductible, because the record contains no evidence of *when* Birtcher paid the $5,000 deductible.[7] Amounts incurred *prior* to

---

5. The $3,380.33 was not billed to Reliance. The $250 stems from costs incurred on March 24, 2000, the date Birtcher's attorney signed his affidavit. The district court determined that Birtcher proved the amount of these fees. Arguing in the alternative, Cincinnati acknowledges that these amounts were not paid by Reliance, and Cincinnati does not assert that the district court abused its discretion in limiting Birtcher's recovery to these proven damages.

6. Birtcher also asserts that it should be reimbursed for what it characterizes as "[c]osts paid directly by Birtcher" in the amount of $1,763.40. Nevertheless, in his initial affidavit, Birtcher's attorney notes that this amount

was "paid directly by [Birtcher] and/or it's [sic] insurer [Reliance]." By virtue of this equivocation, the district court determined that Birtcher failed to prove that it was not reimbursed by Reliance for this amount. We agree.

7. Cincinnati failed to raise this argument in any of its written submissions below and the district court did not address the issue in its decision. Cincinnati briefly raised the issue during the summary-judgment hearing before the district court on May 16, 2000, however, and counsel for Birtcher conceded at oral argument that the issue had been raised below and therefore may be raised on appeal.

the tender of a defense are not recoverable. *See Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 739 (Minn.1997) ("[A]n insurer cannot be held responsible for defense costs incurred prior to the tender of the defense request."); *cf. SCSC Corp.*, 536 N.W.2d at 316 ("[F]ormal tender of a defense request is a condition precedent to the recovery of attorney fees that a party incurs defending claims that a third party is contractually obligated to pay."). Birtcher tendered its defense to Cincinnati on August 4, 1998. Cincinnati claims the district court erred because it ordered Cincinnati to reimburse Birtcher for the deductible without determining that Birtcher paid the deductible after the date of tender.

In his affidavit, Birtcher's attorney stated that Birtcher paid the deductible, but did not indicate when Birtcher made the payment. Because the record fails to establish when Birtcher paid the deductible, we remand to the district court for a specific finding. If it was paid before the tender, Birtcher is not entitled to recover the deductible. *Cf. SCSC Corp.*, 536 N.W.2d at 317 (remanding to district court to establish what portion, if any, of district court's award of attorney fees was incurred before tender of defense).

### 6. Birtcher's Motion to Admit Appellate Evidence

Birtcher moves for admission on appeal of its third-party complaint in the underlying Klitzke injury claim. The record on appeal consists of the "papers filed in the trial court, the exhibits, and the transcript of the proceedings, if any." Minn. R. Civ.App. P. 110.01. Here, Birtcher concedes that a copy of the third-party complaint was not made part of the record in the declaratory-judgment action. We will not base our decision on matters outside the record on appeal, and we refuse to consider matters not produced and received in evidence below. *Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn.1988). Moreover, Birtcher fails to demonstrate how the third-party complaint on the underlying Klitzke injury claim is relevant to the issues on appeal. *See Kersten v. Minnesota Mut. Life Ins. Co.*, 608 N.W.2d 869, 874 (Minn.2000) (refusing to consider document submitted for the first time on appeal that had minimal relevance to the issue before the court). We deny Birtcher's motion to admit appellate evidence. Nevertheless, this result has no bearing on our ultimate determination of the issues.

### DECISION

Cincinnati breached its duty to defend Birtcher in the Klitzke injury claim, and the district court properly granted summary judgment in favor of Birtcher. The district court did not abuse its discretion by limiting the award of damages and attorney fees to amounts not paid by Birtcher's own insurer. If, on remand, Birtcher can establish that it paid the deductible after it tendered its defense to Cincinnati, an award of this out-of-pocket expense would be proper. Birtcher's motion to admit appellate evidence is denied.

**Affirmed in part and remanded.**